# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                              )

**JAMES A. WASHINGTON,**         )
                              )

      **Plaintiff,**            )
                              )

      **v.**                    )     **Civil Action No. 08-1502 (JR)**
                              )

**PETE GEREN,**              )
**Secretary of the Army,**     )
                              )

      **Defendant.**           )
_____)

## MEMORANDUM OPINION

      Plaintiff James A. Washington, proceeding pro se, sues his former employer, the

Secretary of the Army.  Citing the Rehabilitation Act, 29 U.S.C. § 701 et seq., and TitleVII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the amended complaint alleges that the

defendant discriminated against the plaintiff because of his disability and retaliated against him

for a prior legal activity.  The defendant Secretary has moved to dismiss some claims and for

summary judgment on other claims, the plaintiff has filed an opposition, and both parties have

submitted numerous exhibits.  For the reasons set forth below, the Secretary's motion will be

granted in part and denied in part.

*Background*

      Mr. Washington had a job as a custodian in the Environment Services Division ("ESD")

at the Walter Reed Army Medical Center from 1993 until he resigned on October 10, 2007.

Def.'s Stmt. of Material Facts not in Dispute ("Def.'s Facts") ¶ 1.  Mr. Washington alleges that at

"all relevant times," he was "disabled as a result of depression,"[1] Am. Compl. ("Compl.") ¶ 5, and alleges discrimination on this account, *id*. ¶ 8 ("Defendant took each of these [complained of] actions as a result of Washington['s] . . . disability.")  He also alleges that the defendant retaliated against him because of his prior complaints and lawsuit.  *Id*. ¶ 6 (implicitly referring to without citing his multiple EEO administrative complaints and his prior lawsuit, *Washington v. White,* Civil Action No. 01-420 (RBW) (D.D.C.), filed Feb. 27, 2001), *id*. ¶ 8 ("Defendant took each of these actions as a result of Washington['s]  past filing[] of grievances . . . .").  The Secretary counters that his employment decisions regarding Mr. Washington were motivated by Mr. Washington's chronic absenteeism and failure to comply with the leave policy, and not by his disability or his prior legal activity.  *See* Mem. in Support of Def.'s Mot. to Dismiss in Part and for Summ. J. ("Def.'s Mot.") at 31-36.

Mr. Washington, like all ESD employees, was subject to a leave policy that required him to provide medical documentation justifying any sick leave lasting more than three days.  Def.'s Facts ¶ 9; Def.'s Mot., Ex. 2, Decl. of Leon C. Thurston, Apr. 7, 2009 ("Thurston Decl.") ¶ 4.  The factual record establishes that in May 2004, citing Mr. Washington's negative sick leave balance and repeated failure to comply with the standard leave policy, Mr. Washington's supervisor issued a leave restriction notice to him, requiring that he request leave for any planned absence at least one day in advance in writing, and to call his supervisor within the first two hours of the shift for any unplanned absence.  Def.'s Mot. Ex. 5; Def.'s Facts ¶ 12.  By agreement dated June 28, 2004, and approved by the court, Mr. Washington and the defendant settled a

---

[1]  Documents submitted by the plaintiff show a psychiatric diagnosis of major depression and paranoid personality disorder.  *See* Opp'n Exs. 20, 116.

prior Title VII lawsuit.  *See Washington v. White,* Joint and Voluntary Stipulation of Settlement

and Dismissal (June 30, 2004).[2]  In November 2004, the leave restriction was extended because

Mr. Washington had used another 275 hours of sick leave and was only sporadically complying

with the leave restrictions imposed earlier.  Def.'s Mot. Ex. 7; Def.'s Facts ¶ 12-13.  These leave

restrictions were extended periodically through the remainder of Mr. Washington's employment

due to his continued chronic absenteeism.  *See* Opp'n Exs. 42, 43, 48 (notices extending leave

restrictions).

In January 2005, the plaintiff claimed he was injured on the job, a claim as to which his

supervisor expressed his doubts to management.  Compl. ¶ 7B; *see also* Thurston Decl. ¶ 6 &

Encl. 4 (explaining the basis for expressing his doubts about a reported knee injury).  Later that

month, the defendant was advised that due to his knee injury Mr. Washington should be assigned

to only light duty.  Def.'s Mot. Ex. 10.  In March 2005, in lieu of other light duty, he was

temporarily assigned to work outside as a doorman on the loading dock.  Compl. ¶ 7C.

Thereafter, he was assigned to light duty answering telephones and conducting inventory.

Thurston Decl. ¶ 7.  In the work year 2005, Mr. Washington was absent 872 hours, which is a

little more than 43% of the typical 2000 hour work year.  Opp'n Ex. 48.

In January 2006, Mr. Washington's supervisor directed other employees not to answer

questions about Mr. Washington's EEO complaint.  Compl. 7I.  The supervisor, Leon Thurston,

has averred that he told other employees that "they shouldn't talk to anyone about the case until

---

[2]  Mr. Washington's attendance record and compliance with the Secretary's leave policy were issues in the prior lawsuit, as well.  *See Washington v. White*, Mem Op. at 8-9 (Oct. 22, 2002) (noting Washington's alleged excessive and unscheduled absences from work, and that he did not maintain a regular work schedule from 1996 through 1998).

they checked with management first to see if the person was legitimately there."  Thurston Decl.

¶ 13 (further explaining that his intention "was to maintain some order at the worksite [sic], and

to make sure whoever came to talk to my employees was therefore an appropriate reason.").

Mr. Washington was absent more than eleven days in January and February, and all but 5 days,

aggregated, in March.  Def.'s Facts ¶ 9.  Without providing medical documentation, he cited

workplace stress as the reason.  Opp'n Ex. 124, 124-B.  In early March 2006, Mr. Washington

believed a co-worker stole his lottery ticket, and made multiple verbal threats to that co-worker's

physical safety.  *See* Thurston Decl.  ¶ 2 & Encl. 1 ("Memorandum to File" signed by Edna

Royster, Mar. 9, 2006).  Mr. Washington was absent from work all of April.  Def.'s Facts ¶10.

Nonetheless, in April 2006 he complained of a "large volume of work" because a worker on the

night shift had "not been performing his duties," and complained that he had not been assigned to

work overtime on "weekends for months."  Opp'n Ex. 32; *see also* Compl. ¶ 7M; Opp'n at 27.

By mid-April, in the wake of his absenteeism and his verbal threats of bodily harm, his employer

arranged for a psychological fitness-for-duty examination to be conducted in June, and directed

Mr. Washington to attend.  Def.'s Facts ¶ 6; Opp'n Ex. 122.  In May, Mr. Washington reported to

work only one and one-half days.  Def.'s Facts ¶ 10.  In June, the month Mr. Washington was

due to return to regular duty after having been on "light duty" since sustaining his knee injury

some 18 months earlier, he reported for just one day of duty — the psychological examination.

*Id.* ¶ 10; Def.'s Mot., Ex. 4 (Report of Psychological Examination) at 8 (noting that

Mr. Washington reported that he was due to return to regular duty that month).  The report of the

psychological examination, submitted on or about July 31, 2006, *see* Opp'n Ex. 109 (cover letter

for report), advised that despite his long-term treatment for his mental health problems, it was not

likely that Mr. Washington would be able to resume a productive role as an employee, *see* Def.'s Facts ¶ 8, Def.'s Mot. Ex. 4 (Report of Psychological Examination).  Mr. Washington did not report to work at all in July 2006 or anytime thereafter.  Def.'s Facts ¶ 10.  In September 2006, because he was still in violation of his leave restrictions, Mr. Washington's absences were designated as without leave ("AWOL").  Thurston Decl. ¶ 25.  Mr. Washington was cleared by his personal psychiatrist to return to work on December 26, 2006, *see* Opp'n Ex. 115, but he did not report to work.  Instead, he requested administrative leave with pay.  *See id.* at 32 & Ex. 156-B.  His supervisors advised him that they did not have grounds to approve his request for paid leave.  Def.'s Facts ¶¶ 50, 51.

In January 2007, Mr. Washington made a request under the Freedom of Information Act to his employer for his medical and other records.  *See* Reply to Pl.'s Opp'n to Def.'s Mot. ("Reply"), Decl. of Judy J. Bizzell, Sept. 18, 2009 ("Bizzell Decl.") ¶¶ 5, 8.  The defendant provided multiple responses to his request, including releasing more than 600 pages of documents.  *Id.* ¶¶ 7, 9, 12, 14, 16.  Mr. Washington continued in unpaid AWOL status until he resigned by letter dated October 10, 2007.  Def.'s Facts ¶ 10.

Mr. Washington posits that he was discriminated and retaliated against when the defendant did not place him on administrative leave with pay rather than classify him as AWOL.  *See* Compl. ¶ 7T; Opp'n at 30 ("The plaintiff couldn't work due to the examination for a preexisting condition that the employer knew about for years."); *see also* Def.'s Mot. Ex. 19.  He also suggests that he was not free to return to work after the psychological exam.  Compl. ¶ 7S; Opp'n at 32 ("The plaintiff requested administrative leave due [to] the fact [that] the plaintiff couldn't work because of the ordered exam.") (punctuation altered).  In addition, he identifies

5

several other instances that he offers as examples of the defendant's alleged disability

discrimination and retaliation, including extending the leave restriction in November 2004,

Compl. ¶ 7A, treating some absences as AWOL and taking other attendance-related measures, *id.*

¶¶ 7D-7H, 7X, directing other employees to not answer questions about plaintiff's EEO

complaint without confirming that the questioner was legitimately present, *id.* ¶ 7I, directing

plaintiff to report for the fitness for duty examination in summer 2006, *id.* ¶ 7L, assigning

plaintiff to work temporarily in inclement weather as a doorman for the loading dock, *id.* ¶ 7C,

failing to investigate an alleged theft by co-workers, *id.* ¶¶ 7J, 7N, expressing disbelief of an

unwitnessed workplace injury for which Mr. Washington filed a claim, *id.* ¶ 7B, low pay, *id.*

¶ 7V, allowing excessive workloads and providing no overtime assignments in the months

leading up to April 2006, *id.* ¶ 7M, not timely providing requested documents, *id.* ¶¶ 7O, 7P, 7U,

and violating the terms of their prior settlement agreement, *id.* ¶ 7R.

*Analysis*

On a motion to dismiss, a complaint or part of it may be dismissed if it fails to state a

claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A pro se complaint is entitled

to liberal construction.  *Haines v. Kerner,* 404 U.S. 519, 520 (1972).  However, any time a court

determines that a claim filed by a plaintiff proceeding in forma pauperis fails to state a claim

upon which relief may be granted, the claim must be dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).

In considering whether a complaint fails to state a claim upon which relief may be granted, a

court generally "must accept as true all of the factual allegations contained in the complaint,"

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "grant plaintiffs the benefit of all inferences that

can be derived reasonably from the facts alleged," but need not accept either a plaintiff's legal

conclusions, or inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).[3]

A movant is entitled to summary judgment when he can show that on the entire record before the court, "there is are no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell,* 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *Holcomb v. Powell,* 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. The

---

[3]  The amended complaint contains a non-specific, wholly conclusory allegation that the defendant altered an EEO hearing transcript.  This allegation, naked of any specific facts, fails to meet the *Iqbal* standard of facial plausibility and will be dismissed on the court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii).  *See* Compl. ¶ 7Q ("In February of 2007, the agency illegally altered Equal Opportunity Employment [sic] Commission hearing transcript.")

non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor.  *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50; *see Scott v. Harris,* 550 U.S. 372, 380 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, 'there is no genuine issue for trial.'") (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In short, to defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims."  *Freedman v. MCI Telecommunications Corp.,* 255 F.3d 840, 845 (D.C. Cir. 2001).

*The disability discrimination and retaliation claims*

A plaintiff is required first to exhaust his administrative remedies before filing suit under either Title VII or the Rehabilitation Act.  *Bowden v. United States,* 106 F.3d 443, 437 (D.C. Cir. 1997).  Where, as here, the defendant has not waived the exhaustion requirement, this court may consider only those matters already vetted in the administrative process or claims "like or reasonably related to" those matters.  *Park v. Howard University*, 70 1F.3d 904, 907 (D.C. Cir. 1995).  In this case, several of the allegations in the amended complaint were not exhausted, are not like or reasonably related to the allegations made in the administrative process, and are therefore not properly before this court.  *See* Def.'s Mot. at 23.  Accordingly, to the extent those

8

allegations constitute claims of disability discrimination or retaliation for protected legal activity, they will be dismissed for failure to state a claim upon which relief may be granted.[4]

In addition, to obtain relief under either Title VII or the Rehabilitation Act, a plaintiff must show "(I) that the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C. Cir. 2008) (emphasis added).  An adverse employment action is one that causes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).  In this case, most of the matters alleged in the amended complaint do not amount to adverse employment decisions. Therefore, with the exception of the measures that deprived Mr. Washington directly or indirectly of days of paid leave, the amended complaint does not identify any adverse employment actions.  Accordingly, to the extent that the remaining allegations in the amended complaint were intended to state claims of disability discrimination or retaliation, they fail, and the defendant is entitled to summary judgment on those claims.[5]

---

[4]  These claims include the allegations in the amended complaint at ¶¶ 7B (that his supervisor forwarded false information about plaintiff's workplace injury), 7J (that his supervisor did not "address the fact" that co-workers had some of plaintiff's personal property), 7K (that the defendant's EEO office used the plaintiff's disability to remove him and never intended to help him), 7M (the plaintiff was given excessive workloads and not given weekend over time for several months), 7N (the plaintiff's supervisor did not investigate plaintiff's allegation of workplace crimes), 7P (that the defendant did not promptly respond to a request for a hearing transcript), 7Q (that the defendant altered a hearing transcript), and 7U (that the defendant did not respond to requests under the Freedom of Information Act).

[5]  Specifically, the Rehabilitation Act and Title VII claims that fail for this reason are the following:  Compl. ¶ 7C (that the plaintiff was required to work outside temporarily as a doorman on the loading dock to accommodate his request for light), ¶ 7I (that a supervisor

In an employment discrimination case brought under either Title VII or the Rehabilitation

Act, the burden-shifting algorithm of *McDonnell Douglas* may be applied. *Barth v. Gelb,* 2 F.3d

1180, 1185 (D.C. Cir. 1993) (approving the application of Title VII's *McDonnell Douglas*

burden-shifting algorithm to the Rehabilitation Act). Furthermore, regardless of whether a

plaintiff has fulfilled his burden of making a prima facie case, a defendant employer may

successfully defend itself by establishing that his actions were based on a legitimate, non-

discriminatory reason. *Brady v. Livingood,* 520 F.3d 490, 493 (D.C. Cir. 2008) (stating that

inquiry into the prima facie case is almost always irrelevant if the defendant has offered a

legitimate non-discriminatory reason). In the end, under either Title VII or the Rehabilitation

Act, a plaintiff must prove that the defendant's adverse employment action was taken "because

of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v.*

*Kempthorne,* 550 F.3d at 1196. Similarly, a plaintiff alleging retaliation must prove that he

suffered an adverse employment action because of his prior protected legal activity. *See*

*Broderick v. Donaldson*, 338 F. Supp. 2d 30, 38 (D.D.C. 2004) (stating that the elements of a

Title VII retaliation claim are (1) engaging in a statutorily protected activity, (2) an adverse

employment action, and (3) a causal connection between the two). Thus, without deciding

whether any of the actions of which Mr. Washington complains were adverse, the only question

to be resolved at this juncture is "whether the plaintiff has produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual

---

instructed other employees not to answer questions about the plaintiff's EEO complaint until the
supervisor had confirmed the auspices of the questioner, *see* Thurston Decl. ¶ 13), ¶ 7L (that
plaintiff was ordered to undergo a fitness for duty examination), ¶ 7O (that defendant stated that
the report of the fitness for duty examination belongs to the defendant) ¶ 7R (that the defendant
violated one of the terms of the settlement agreement).

reason and that the employer intentionally discriminated against the employee on the basis of [disability or engaging in protected activity]." *Brady v. Livingood*, 520 F.3d at 494.

The record in this case shows that Mr. Washington had frequent and prolonged absences from work in violation of the employer's standard leave policy and in violation of the leave restrictions that were imposed on him from May 2004 forward as a result of his failure to abide by the leave policy or to maintain a regular work schedule.  There is no evidence in the record that would support a reasonable jury finding that it was Mr. Washington's depression rather than his absenteeism that were the actual reason for charging some of his absences as AWOL, for extending the leave restrictions imposed on him, or for refusing to place him on leave without pay.[6]  The record does not show that Mr. Washington's pay was any less than those of others of

---

[6]  The amended complaint does not expressly assert a claim for a hostile work environment or use any form of the phrase "hostile work environment."  It is clear that the plaintiff is aware of such a claim and that he had asserted such a claim elsewhere.  *See* Def.'s Mot. at 1, 4.  Therefore, unlike the defendant, *id.*, the court declines to infer a claim for hostile work environment from the amended complaint.  Had a claim hostile work environment claim been inferred, in all likelihood it would have failed for the reasons stated by the defendants.  *See id.* at 41-46 (arguing that the incidents alleged do not rise to the level of adversity required by a hostile work environment claim).

The amended complaint also does not expressly assert a claim for refusal to reasonably accommodation the plaintiff's depression, and does not use any form of the word "accommodate."  Accordingly, the court does not infer such a claim.  Such a claim would fail in any case.  Any inference of an accommodation claim from this record would require treating Mr. Washington's absence as the reasonable accommodation.  A plaintiff making an accommodation claim under the Rehabilitation Act must show that with the "reasonable accommodation, [he] can perform the essential functions of the position in question."  *Barth v. Gelb*, 2 F.3d at 1186.  It is obvious that Mr. Washington could not both be absent and perform the essential functions of his custodial position; thus the claim would fail.

It should also be noted that the record directly contradicts Mr. Washington's belated assertion that the "plaintiff's department [] refused to allow him [to] have anger management treatment, which was recommended by medical professionals . . . ."  Opp'n at 3 (citing exhibits 8, 9, 11 & 13).  The record submitted by Mr. Washington shows that he was allowed to attend

similar tenure in the ESD, and therefore cannot serve as the basis for a disparate treatment claim.[7]

The supervisor who imposed the leave restrictions in May 2004 and extended them thereafter and who designated certain absences as AWOL has attested that he did so because of Mr. Washington's absenteeism and not for any other reason.  Thurston Decl. ¶ 5, 8, 10, 11, 12, 15, 18.  He has also attested that the knew almost nothing about the prior suit or the terms of its settlement, and has denied that it was a consideration in his decision at all.  Thurston Decl. ¶ 24. Mr. Washington has not offered any rebuttal evidence on that point.  In the face of Mr. Washington's absenteeism, there is no basis on which a reasonable jury could find that retaliation and not absenteeism was the actual reason for the measures taken.

*Freedom of Information Act claim*

Although the allegation that the defendant did not respond to requests for documents cannot be treated as part of a discrimination claim because it was not exhausted in the administrative EEO process, it may be treated as an independent claim under the Freedom of Information Act, ("FOIA") 5 U.S.C. § 552.  The FOIA requires a plaintiff to exhaust his administrative remedies before filing suit in federal court.  While the FOIA exhaustion

---

anger management training sessions as recommended by Adventist Hospital and the defendant's Employee Assistance Program staff, and provided by Adventist Hospital.  *See* Opp'n Ex. 9 (letter from Washington Adventist Hospital recommending anger management training), *id.* Ex. 11 (EAP letter recommending anger management counseling ), *id.* Ex. 14 (certifying that Mr. Washington attended Adventist Hospital's three-day anger management training program); *compare id.* Ex. 20 (psychiatrist open letter stating his belief that his patient, Mr. Washington, had not been able to attend the anger management sessions at Adventist Hospital).

[7]   The defendant's statement that there was an attempt to upgrade the pay for all members of the team including Mr. Washington is unsubstantiated, as the pages referenced are not part of the record submitted to the court.  *See* Def.'s Mot. at 16.  Therefore, the statement is not credited as fact.

requirement is not jurisdictional, it serves as a jurisprudential bar designed to allow the agency to review and, if warranted, to correct its mistakes, and to conserve the court's resources. *Hidalgo v. FBI,* 344 F3d 1256, 1258-59 (D.C. Cir. 2003). The Secretary has submitted a declaration from the FOIA Officer at WRAMC attesting that in response to his multiple FOIA requests, Mr. Washington received several hundred pages of responsive documents and did not lodge an administrative appeal. *See* Bizzell Decl. ¶ 17. Therefore, Mr. Washington's FOIA claim will be dismissed because it fails to state a claim upon which relief may be granted because the plaintiff did not exhaust his administrative remedies before him filing suit on the claim. *Id.*

*Breach of contract claim*

The amended complaint asserts a breach of the settlement contract entered into between the Secretary and Mr. Washington in a prior case. As a discrimination claim, it was not exhausted in the administrative EEO process, and therefore cannot be heard here now. However, brought as an independent breach of contract claim, the matter need not be first raised or exhausted in the administrative process. Therefore, the basis for the defendant's argument that the claim should be dismissed because it was abandoned in the EEO administrative complaint process is ineffective to dispose of the allegation entirely. *See* Def.'s Mot. at 14; Reply at 15.

The amended complaint, however, contains only a conclusory allegation of a breach of contract, devoid of any factual allegations, and does not meet the minimum requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the grounds upon which the court's jurisdiction depends, a short and plain statement showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks to obtain. Fed. R. Civ. P. 8(a).

The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense and to determine whether the doctrine of *res judicata* applies.  *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).  The plaintiff's opposition contains some factual allegations, but the plaintiff is not entitled as of right to further amend his complaint, and he has not sought leave to do so as required by Federal Rule of Civil Procedure 15.  Even *pro se* litigants must comply with the Federal Rules of Civil Procedure.  *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Therefore, the plaintiff will be allowed to file, within 30 days of this order, a motion for leave to further amend the complaint with a breach of contract claim, attaching the proposed breach of contract claim as an exhibit.  Failure to move for leave to amend and submit the proposed breach of contract claim within the time allowed will result in the breach of contract claim being dismissed pursuant to the court's authority under 28 U.S.C. § 1915(e) for failure to state a claim upon which relief may be granted.

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge